NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPIDERPLOW, INC., <br><br>  Plaintiff, <br><br> v. <br><br> SITE ENERGY, <br><br>  Defendant. | Civil Action No.: 16-2318 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

Presently before the Court is Defendant's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, to transfer the matter to the District of Nebraska or the District of South Dakota. ECF No. 6. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's motion.

  I.   **PERSONAL JURISDICTION**

    A.   **Legal Standard**

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if

the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). "General jurisdiction results from, among other things, 'systematic and continuous' contact between a non-resident defendant and the forum state." *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009) (quoting *Int'l Shoe*, 326 U.S. at 320). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In other words, specific jurisdiction exists where the "cause of action arises out of [the] defendant's forum-related activities, such that the defendant should reasonably anticipate being hauled into court in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008) (quoting *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001)).

Three elements must be met to establish specific jurisdiction. *See HS Real Co., LLC et al. v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. *Id.* Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Int'l Shoe*, 326 U.S. at 320).

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe*, 566 F.3d at 330 (internal quotation omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97. Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen v. Butler Specialties, Inc.*, No. 10-cv-2833, 2011 WL 831933 at *2 (D.N.J. Mar. 3, 2011) (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 1067.6 (3d ed. 2002)). The plaintiff, however, retains "the burden of demonstrating [that the defendants'] contacts with the forum state are sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990). "These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot*, 128 Fed. App'x 266, 268 (3d Cir. 2005) (quoting *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

### B.  BACKGROUND

On April 25, 2016, Plaintiff filed a complaint against Defendant asserting claims for breach of an oral contract, breach of the covenant of good faith and fair dealing, negligence, and a violation of the New Jersey Consumer Fraud Act. *See* ECF No. 1. Aside from Plaintiff's statement that venue was proper because "a substantial part of the events or actions giving rise to plaintiff's claim were directed to the plaintiff, a New Jersey corporation, and its principal officer, James

3

O'Connor, who resides in New Jersey," the complaint contains no other factual information regarding the contacts of the parties and/or claims to New Jersey. *Id.*

In support of its motion to dismiss, Defendant submitted two declarations, one from John A. Basinger, and the other from Gail Brosseau. Mr. Basinger's declaration simply attaches records related to state business registrations of Plaintiff and Defendant. Ms. Brosseau's declaration generally addresses Defendant's contacts—or lack thereof—with New Jersey. Neither Mr. Basinger's nor Ms. Brosseau's declarations address the facts surrounding the negotiations of the oral contract at issue or other facts related to the specific claims asserted by Plaintiff.

In support of its opposition, Plaintiff submitted a declaration of James O'Connor, Jr., President of Spiderplow, Inc., as well as a declaration of attorney Timothy K. Saia. Mr. O'Connor's declaration puts forward certain facts regarding the solicitation of work by Defendant of Plaintiff via Mr. O'Connor while he was in New Jersey, as well as other facts related to the negotiations of the contract and representations at issue. Mr. Saia's declaration attaches a draft contract circulated between Plaintiff and Defendant as well as LinkedIn profiles of certain of Defendant's employees with whom Mr. O'Connor allegedly negotiated. Defendant did not submit any declaration in reply contesting the facts as put forth by Mr. O'Connor. For purposes of this motion, the Court has accepted "plaintiff s allegations as true, and [has] construe[d] disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330 (internal citations omitted).

Spiderplow "is a full service construction contractor specializing in among other things, fiber optic cable, pipe and conduit plowing." Decl. of James O'Connor, Jr. in Opp'n to Def. Site Energy (USA), Inc.'s Mot. to Dismiss or Transfer Venue ("O'Connor Decl.") ¶ 2. Plaintiff Spiderplow is a New Jersey corporation with its principal place of business in Denver, Colorado.

4

*See* Compl. ¶ 1; Decl. of Timothy K. Saia, Esq. (submitted in support of Plaintiff's motion) ("Saia Decl."), Ex. 1; Decl. of John A. Basinger in Supp. of Def.'s Mot. to Dismiss ("Basinger Decl."), Ex. C (Spiderplow's Nebraska state registration listing Jim O'Connor as President and Spiderplow with a Denver address). Mr. O'Connor resides in New Jersey, Compl. ¶ 2, and "[w]hile Spiderplow maintains offices in Denver, [he] is rarely there," O'Connor Decl. ¶ 47. Spiderplow does not have "any employees, agents or servants in Nebraska." O'Connor Decl. ¶ 31.

Site Energy "is in the construction business and provides general contracting, trenching and dirt excavation services." Decl. of Gail Brosseau in Supp. of Def.'s Mot. to Dismiss or Transfer Venue ("Brosseau Decl.") ¶ 2. Site Energy (USA), Inc. "is incorporated in North Dakota and has its principal place of business in Arnegard, North Dakota." *Id.* ¶ 3. Site Energy (USA), Inc. "is a wholly-owned subsidiary of Site Energy Services (USA) Ltd., a North Dakota corporation with its principal place of business in Arnegard, ND." *Id.* ¶ 4. Site Energy Services (USA) Ltd. is a "wholly-owned subsidiaries of Site Energy Services Partnership ('SESP'), a partnership organized and having its principal place of business in Alberta, Canada." *Id.* ¶ 5. Plaintiff appears to be bringing suit against SESP, as the complaint identifies Defendant as the Canadian corporation. Compl. ¶ 2. None of the Site entities are registered to do business in New Jersey, none have a registered agent in New Jersey, none have employees, property, or bank accounts in New Jersey, none pay taxes in New Jersey, none have provided construction services in New Jersey, and none have employees who regularly travel to New Jersey. Brosseau Decl. ¶¶ 6-11.

On July 20, 2015, SESP employee Todd Anderson (*see* Saia Decl., Ex. B) contacted Mr. O'Connor in New Jersey to solicit work from Spiderplow. O'Connor Decl. ¶¶ 3-4. Spiderplow expressed interest in working with Defendant, and thereafter, because of Mr. O'Connor's travel

5

plans, the parties met in Minnesota to discuss potential work. *Id.* ¶ 6. Defendant had offered to come to New Jersey to discuss potential future business and negotiate a contract for a project in Nebraska. *Id.* ¶¶ 6, 42. Defendant additionally directed "multiple phone calls and emails" to Mr. O'Connor in New Jersey related to potential work in the United States and then to negotiate a contract with Spiderplow for the Nebraska project. *Id.* ¶¶ 7-8, 10-11, 13, 16-17, 19, 22, 32-33.

Although the parties did not execute a written contract, a draft contract was sent by Defendant to Mr. O'Connor on October 14, 2015. *Id.* ¶ 19; *see also* Saia Decl., Ex. A. The draft contract identifies Spiderplow as a New Jersey corporation, whose principal place of business is Denver, Colorado. *See* Saia Decl., Ex. A. The draft contract identifies Site as having offices in Texas. *See id.* Additionally, the draft contract provides that any dispute that cannot be amicably resolved any suit "must be" filed in New Jersey Superior Court in Essex County or via arbitration in Newark, New Jersey. *Id.* ¶ 23. The draft contract further states that the "agreement is being executed and delivered in the State of New Jersey and shall be construed and enforced in accordance with the law thereof." *Id.* ¶ 35. The draft of the contract that was sent by Defendant to Plaintiff had certain provisions crossed through; the above provisions related to New Jersey were not crossed out. *Id.*, Ex. A. "All employees of Spiderplow, Inc. that were involved in the negotiation of the contract in question reside in New Jersey." O'Connor Decl. ¶ 35. The employees of Defendant with whom Mr. O'Connor negotiated the contract are located in Canada. *See id.* ¶¶ 38-40. Mr. O'Connor asserts that Defendant agreed that the contract would be deemed to be executed in New Jersey. *Id.* ¶¶ 33, 41.

Plaintiff alleges that, as part of the oral agreement for the Nebraska project, Defendant represented that it "could perform construction and construction management including earthworks, preparation, trench plowing, installing tie-ins, lateral boring, horizontal directional

6

drilling (HDD) at a blended rate of $1.64. per foot." Compl. ¶ 9. Plaintiff asserts that Defendant failed to comply with this representation, and therefore breached the agreement with Plaintiff. *Id.* ¶ 10. Based on a claim by Defendant of "unexpected additional work," Plaintiff agreed in November 2015 to a rate increase in order to meet its obligations to the general contractor for the project. *Id.* ¶ 13. Plaintiff alleges that, despite the increase, "Defendant continued to fail to meet their obligations pursuant to the agreement that was entered into between parties." *Id.* ¶ 14. Plaintiff further alleges that it subsequently "learned that despite the defendant representing that [it was] competent and able to perform the services requested, the Defendant employees were not experienced in the field but rather were pipe fitters as oppose to individuals with any experience in the installation of conduit and/or fiber optic cable type/duct." *Id.* ¶ 15. Plaintiff further alleges that, despite Defendant's representations, Defendant had inadequate equipment for the project which, coupled with the negligence of Defendant's operators, resulted in lost "plow time" and other damages, and that it failed to properly supervise and perform the agreed work. *Id.* ¶¶ 18-28. Plaintiff's claims arise out of the representations made by Defendant and performance of the oral contract for the Nebraska project.[1] Work on the Nebraska project that is at issue in this matter has been completed. O'Connor Decl. ¶ 32.

### C. Analysis

In its moving papers, Defendant argues that specific jurisdiction does not exist because Plaintiff "does not allege that Site committed any act in New Jersey. Rather, this civil action concerns an oral agreement between Site and Spiderplow for the performance of fiber optic

---

[1] Defendant does not dispute that the "case arises out of construction work under an oral agreement between Spiderplow and Site." Def.'s Mot. at 3.

plowing in Nebraska." Def. Mot. at 8.[2] Defendant further argues that "[t]he only connection that this civil action has to the state of New Jersey is that Spiderplow is incorporated in this state." *Id.* at 9. In opposition, Plaintiff submitted declarations representing that Defendant solicited the work in question via telephone calls to its president in New Jersey, and that Defendant was aware the Plaintiff was a New Jersey corporation and that both parties expected that any legal suit would take place in New Jersey and be governed by New Jersey laws. *See* Pl.'s Opp'n at 9; O'Connor Decl. ¶¶ 19-21; Saia Decl., Ex. A. In reply, Defendant argues that the contacts directed to New Jersey are insufficient to confer jurisdiction. Def.'s Reply at 4-5. Defendant did not submit any declarations rebutting the factual assertions set forth by Plaintiff in support of its opposition.

Specifically, Defendant argues that "informational communications in furtherance of a contract" or "negotiations over email, telephone, fax, and mail" are insufficient to establish the requisite contacts to confer specific jurisdiction. Def.'s Reply at 3-4. While Defendant's statements are accurate, Defendant's application of that law to the facts in this case overstates the law and fails to fully account for the facts as alleged by Plaintiff (which it has not disputed).

Physical entrance into the forum state by a defendant is not required to demonstrate purposeful availment. *See Burger King*, 471 U.S. at 476. In some circumstances, "[a] contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" *Grand Entertainment Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482-83

---

[2] Although Plaintiff argues cursorily that "the New Jersey District Court has general jurisdiction, as well as specific jurisdiction over Site Energy," Pl.'s Opp'n, at 2, Plaintiff provides no factual analysis directed at general jurisdiction. *See id.* at 7 (the heading of Plaintiff's argument outlines a specific jurisdiction analysis). Because Plaintiff makes no meaningful argument for general jurisdiction, and the Court has not been provided with facts supporting systematic and continuous contacts by Defendant with New Jersey, the Court's discussion is directed at Plaintiff's specific jurisdiction arguments.

(3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478) (internal quotation marks omitted); *see also Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (same). Where a contract is central to the minimum contacts analysis, courts also must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Vetrotex*, 75 F.3d at 151 (quoting *Burger King*, 471 U.S. at 479). To this end, "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *Grand Entertainment*, 988 F.2d at 482. However, while telephone and email communications directed to the state may be counted in the minimum contact analysis, such contacts are generally insufficient by themselves; most cases finding jurisdiction based on such communications include other connections directed at the forum. *See Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ("[A]n exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws.") (citing to and quoting *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985)); *Vetrotex*, 75 F.3d at 152 (a "passive buyer" who exchanged communications with a person in the forum state was insufficient to establish minimum contacts where the defendant did not "solicit[] the contract or initiate[] the business relationship leading up to the contract" and did not "engage[] in extensive post-sale contacts with the plaintiff in the forum state"); *Grand Entertainment*, 988 F.2d at 482-83 (minimum contacts found where the defendant "deliberately and personally directed significant activities toward the state" including "direct[ing] at least twelve communications to the forum" and "engag[ing] in negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum"); *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 147-48 (3d

Cir. 1992) (telephone calls and correspondence sent into New Jersey from Louisiana by defendant together with a meeting in New Jersey to facilitate the closing of a loan sufficient to establish purposeful availment); *Sandy Lane Hotel Co., Ltd.*, 496 F.3d at 318 (finding that a defendant who "mail[ed] a brochure to the state's residents and exchang[ed] phone calls" "for the purpose of forming an agreement to render spa services" "deliberately reached into Pennsylvania to target two of its citizens"); *Vanz, LLC v. Mattia & Associates*, No. 13-cv-1393, 2014 WL 1266220, at *2-3 (D.N.J. Mar. 26, 2014) ("Despite Geisler's lack of physical presence in New Jersey, the email communications and telephone calls when taken as a whole, demonstrate that Geisler purposefully directed his activities at New Jersey."); *Kiah v. Singh*, 2009 WL 47021, at *4 (D.N.J. Jan. 6, 2009) (minimum contacts established where "Defendants initiated contact with Plaintiff Kiah in his New Jersey home by email[,]" "the parties engaged in extensive negotiations over email, telephone, fax, and mail regarding the contracts[,]" and, even though "the contracts may not have contemplated performance in New Jersey" it was "undisputed that the Florida Defendants engaged in a close business relationship with Plaintiffs, whom they knew resided in New Jersey").

Here, there are more than informational or passive contacts by Defendant with a resident of New Jersey. Defendant has not disputed that it solicited business from a New Jersey corporation by directing various communications to Mr. O'Connor in New Jersey for the purpose of securing future services from a New Jersey corporation, which resulted in an oral contract, which is the center of the dispute in this case. Although Defendant is not bound by an unexecuted contract, it is notable that it sent a draft contract to Plaintiff in New Jersey that clearly recognized that Plaintiff was a New Jersey corporation and contained terms providing for dispute resolution to occur in New Jersey and the application of New Jersey law. Additionally, Defendant expressed a willingness to travel to New Jersey for purposes of negotiations, and Plaintiff alleges that the

parties agreed that the oral contract would be deemed to be executed in New Jersey. On these facts, the Court finds that Defendant should have reasonably anticipated being hauled into court in New Jersey. And, as noted above, the oral representations and contract that forms the basis of Plaintiff's claims arise out of Defendant's contacts with Mr. O'Connor in New Jersey.

Next, in determining if jurisdiction "comport[s] with fair play and substantial justice," the Court considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King* 471 U.S. at 476-77 (internal quotation marks omitted). In order to defeat jurisdiction that is otherwise proper, these factors "must present a compelling case . . . render[ing] jurisdiction unreasonable." *Id.* at 477. However, "[a] weak minimum contacts showing requires greater emphasis on reasonableness." *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825 (3d Cir. 2005) (citation omitted).

Defendant has not presented a "compelling case" that jurisdiction in New Jersey is unreasonable. Defendant argues that "to permit jurisdiction over Site violates due process because Site has no connection to New Jersey and, thus, lacks any kind of infrastructure or network in this Court to facilitate litigation activity." Def.'s Mot. at 8. However, it provides no detail as to how it—a Canadian company that was purportedly looking for projects anywhere in the United States, and who, at least sometimes sends employees to New Jersey, *see* Brosseau Decl. ¶ 11, will be burdened by litigating the case in New Jersey. It has likewise presented no details of how it will be unable to present any evidence in New Jersey that might be available in Nebraska, North Dakota, or elsewhere. *See Vedicsoft Solutions, Inc. v. Millennium Consulting, Inc.*, 2010 WL

11

4137424, at *5 (N.J. Super. Ct. App. Div. Oct. 22, 2010) (failure to show that there are evidences unavailable in the forum and is available elsewhere mitigates the burden of the defendant). It is not unreasonable to expect Defendant to litigate this matter in New Jersey when it solicited work from Spiderplow by directing contacts to New Jersey, knowing it was a New Jersey corporation and exchanging draft contracts with terms in favor of New Jersey dispute resolution and law. At the same time, New Jersey has a clear interest in adjudicating a contract dispute that involves one of its citizens. Thus, the Court finds that jurisdiction in New Jersey does not offend traditional notions of fair play and substantial justice. For these reasons, the Court finds that jurisdiction over Defendant in this Court exists.

## II.  TRANSFER

In the alternative, Defendant argues that "venue should be transferred to the District of Nebraska or the District of South Dakota." Def.'s Mot. at 9. The Court initially notes that this appears to be a typographical error, and that Defendant intended to indicate that the matter should be transferred to Nebraska or North Dakota. *See* Basinger Decl. (attaching business records related to North Dakota). Additionally, although Defendant's motion argues for transfer to one of these two venues, in its moving and reply arguments, it focuses only on Nebraska. *See* Def.'s Mot. at 11 ("Thus, Nebraska is the forum with the greatest connection to the facts underlying Spiderplow's cause-of-action."); Def.'s Reply at 9 (verbatim the same). As the Court cannot discern any meaningful connection of Plaintiff's claims to North Dakota, the Court directs its analysis to Defendant's request to transfer the matter to Nebraska.

Plaintiff asserts:

While the work in question was done in Nebraska, upon information and belief, none of the employees that worked on the project reside in Nebraska, further, upon information and belief, none of the parties reside in Nebraska. Similarly, all of the

parties that negotiated the contract reside in either the State of New Jersey or Canada.

Pl.'s Opp'n at 14. Defendant, on the other hand, asserts that the "alleged events that gave rise to this matter occurred at the work site in Nebraska," and that, "if the parties were to retain experts, these experts would necessarily have to inspect the worksite in Nebraska." Def. Reply at 8. Defendant also argues that Nebraska has an interest in the litigation because "the construction services at issue were regulated by Nebraska's construction regulations and local ordinances." *Id.* Defendant does not provide further color on these bare assertions, *i.e.* it does not specify if any or which potential witness reside in Nebraska and their importance to Plaintiff's claims or its defenses or further explain why travel to Nebraska will be necessary in light of Plaintiff's claims. In fact, its fact specific transfer argument section of its motion is half a page long in its moving brief and one page in its reply brief.

### A. Legal Standard

28 U.S.C § 1404(a) provides that, "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought..." 28 U.S.C § 1404(a) (West 2011); *see also Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 269, 297 n.5 (3d Cir. 2001). The party moving for transfer bears the burden of demonstrating that a transfer is appropriate. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995).

The Third Circuit has identified private and public factors for courts to consider when deciding whether to transfer an action. *See id.* The "private interest" factors include: (1) Plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *See id.* The "public interest" factors include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law. *See id.*

### B. Analysis

As noted above, Defendant argues that "all the events that give rise to the causes-of-action in the Complaint occurred at the work site in Omaha, Nebraska," and that "[t]he relevant witnesses and evidence are generally located in Nebraska, North Dakota or Colorado." Def.'s Mot. at 11. However, beyond this base assertion, Defendant does not analyze the transfer factors listed above or provide any meaningful analysis of the facts and relevant ties to Nebraska, despite bearing the burden to establish that transfer is appropriate. Defendant's bare bones argument is insufficient to meet its burden here.

Plaintiff is a New Jersey corporation. The oral contract at issue was negotiated via communications directed by Defendant to New Jersey. Defendant has not identified any particular witnesses that are located in Nebraska, and Plaintiff asserts its belief that no relevant witnesses are located in Nebraska. Both parties appear to do business or are available to do business throughout the United States, and no party has raised a financial burden depending on venue. With respect to public factors, this Court does not have issues of congestion, no issue has been raised with respect to enforceability of any judgment as between New Jersey or Nebraska, and New Jersey has an interest in protecting the contract rights of its residents. Finally, although the parties do not argue which state law should be applied to the dispute, the Court notes that the draft contract sent purportedly sent by Defendant to Plaintiff stated that New Jersey law would apply. In any case, there has been no argument that this Court would have an inability to apply New Jersey or

Nebraska law. For these reasons, the Court also finds that Defendant has not met its burden to support transfer of this action.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion is denied. An appropriate Order accompanies this Opinion.

DATED: July 14, 2016

JOSE L. LINARES
U.S.D.J.

15